**IT IS ORDERED as set forth below:**

**Date: March 31, 2026**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 24-54969-JWC |
| KELLY LANE EVANS, | CHAPTER 13 |
| Debtor. | |
| KELLY LANE EVANS; and NANCY J. WHALEY, CHAPTER 13 TRUSTEE FOR THE ESTATE OF KELLY EVANS, | |
| Plaintiffs/Counterclaim Defendants, | ADV. PRO. NO. 24-05140-JWC |
| v. | |
| ESTATE OF ALAN BETZ KAISER, II, BY AND THROUGH LINDSAY KAISER AS ADMINISTRATRIX FOR THE ESTATE; and KAISER HOMES, LLC, | |

1

Defendants/Counterclaim
Plaintiffs,

## **MEMORANDUM OPINION AND ORDER**

Before the Court are cross-motions for partial summary judgment by Plaintiffs and Defendants and a motion to dismiss filed by the chapter 13 trustee. This case revolves around three quitclaim deeds purportedly transferring title of real property from Kelly Lane Evans to Alan Betz Kaiser, II. At first glance, the case appears straightforward; because an official witness—a notary—did not attest any of the deeds and the first deed remained unrecorded, the deeds do not satisfy recordation requirements under Georgia law, hypothetically allowing a trustee to bring an avoidance action pursuant to 11 U.S.C. § 544(a)(3). [1] However, the particular facts of this case and the ambiguity in the complaint present a more nuanced inquiry. The motions before the Court present several gating questions: 1) whether Plaintiffs have standing to bring avoidance actions in the first place; 2) whether Plaintiffs seek avoidance of all three deeds under § 544 in their Amended Complaint, 3) whether Plaintiffs must bring a claim under § 550(a) contemporaneously with an avoidance action under § 544 and whether avoidance of the deeds serves any bankruptcy purpose here; and 4) whether counterclaims can be maintained against the chapter 13 trustee in both her individual and representative capacity. Having fully considered the briefs of the parties and the record in this case, and for the reasons discussed in detail below, the Court concludes the Plaintiffs have standing to pursue this action.

---

[1] All statutory references are to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) unless otherwise specified.

The Court also concludes that Plaintiffs' Amended Complaint only seeks avoidance of two of the three deeds under § 544. However, avoidance of the two deeds is inappropriate on summary judgment because disputed issues of material fact remain. The Court will grant in part and deny in part Plaintiffs' summary judgment motion and will deny the Defendants' motion in full. Finally, the Court will allow counterclaims to be pursued against the chapter 13 trustee in her representative capacity only and not individually.

## I.     <u>PROCEDURAL POSTURE</u>

Nancy Whaley as chapter 13 trustee ("Trustee") and Kelly Lane Evans ("Debtor" or "Ms. Evans") (collectively named "Plaintiffs") filed this adversary proceeding to recharacterize, avoid, or otherwise invalidate quitclaim deeds purportedly transferring Ms. Evans's interest in certain property to Alan Betz Kaizer, II ("Mr. Kaiser"). The named defendants are the Estate of Alan Betz Kaiser, II, by and through Lindsay Kaiser as Administratrix, and Kaiser Homes, LLC (collectively named "Defendants"). Plaintiffs assert six counts in their Amended Complaint:

- Count I requests avoidance of the second and third deeds under § 544(a)(3).

- Count II requests a declaratory judgment that the first deed is a deed to secure debt.

- Count III requests a declaratory judgment that the second and third deeds are fraudulent or ineffective.

- Count IV requests a declaratory judgment of promissory estoppel whereby Ms. Evans reasonably relied on Mr. Kaiser's promises to her detriment.

3

- Count V requests preservation of the avoided transfers pursuant to § 551.

- Count VI requests a declaratory judgment on attorney's fees arising from Defendants' counterclaims.

Defendants filed counterclaims against both Plaintiffs in the event all three quitclaim deeds are avoided: count I breach of contract; count II quantum meruit; count III unjust enrichment; and count IV property had and received (Doc. No. 56)[2] (the "Counterclaims").[3] The Trustee filed a motion to dismiss the Counterclaims asserting that the Trustee has no independent liability for claims outside her role as the chapter 13 trustee (Doc. No. 65) (the "Motion to Dismiss").

Ms. Evans filed an initial motion for partial summary judgment on February 9, 2025 (Doc. No. 12) (the "First MSJ"), along with a declaration by Ms. Evans (Doc. No. 12-2) ("Evans Dec.") and a Statement of Undisputed Material Facts (Doc. No. 12-3) (the "Plaintiffs' SOMF"). Defendants requested the Court defer ruling on the First MSJ until they could engage in additional discovery. The Court denied the First MSJ without prejudice to Plaintiffs' ability to file a renewed motion following the close of discovery by Order entered April 18, 2025 (Doc. No. 30).

After additional discovery, Defendants filed a Motion for Partial Summary Judgment (Doc. No. 67) (the "Defendants' MSJ") seeking summary judgment on counts I, II, and V of the Amended Complaint, or, alternatively, to limit recovery to

---

[2] References to the docket in this adversary proceeding are cited to as "Doc. No." or their respective given title, and references to the docket in the underlying bankruptcy case are cited to as "BK Doc. No."

[3] Both parties were granted leave to file the Amended Complaint and Counterclaims by Order entered August 21, 2025 (Doc. No. 55).

the value of Debtor's exemption amount pursuant to § 522(h). [4] Ms. Evans filed a Renewed Motion for Partial Summary Judgment (Doc. No. 68) (the "Plaintiffs' Renewed MSJ"), seeking summary judgment on count I of the Amended Complaint and Defendants' Counterclaims. [5] The cross-motions for summary judgment are mutually opposed. [6] The Court first addresses the cross-motions for summary judgment and then addresses the Motion to Dismiss.

## II.    **<u>JURISDICTION</u>**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This action involves core and non-core claims and counterclaims under 28 U.S.C. § 157. [7]

---

[4] The Defendants' MSJ is supported by a Statement of Undisputed Material Facts (Doc. No. 67-1) (the "Defendants' SOMF") and numerous exhibits including a Declaration by Linsday Kaiser (Doc. No. 67-3) and a deposition transcript of Ms. Evans (Doc. No. 67-4) ("Evans Dep."). Ms. Evans's deposition testimony was edited by her "Proposed Errata Statement" filed on May 28, 2025 (Doc. No. 33, Ex. 1) ("Errata Statement") which was allowed by Order entered August 20, 2025 (Doc. No. 55). The Court cites to the deposition transcript throughout the facts and references the Errata Statement when specifically citing a correction made by Ms. Evans regarding her testimony.

[5] Plaintiffs' Renewed MSJ is supported by a Supplemental Statement of Undisputed Material Facts (Doc. No. 68-2) (the "Plaintiffs' SSOMF"), and deposition transcripts of Lindsay Kaiser (Doc. No. 69) ("Kaiser Dep.").

[6] Plaintiffs filed a Joint Response to Defendants' Motion (Doc. No. 73) (the "Plaintiffs' Joint Response") and a Response to Statement of Undisputed Material Facts (Doc. No. 74) (the "Plaintiffs' RSOMF"). Plaintiffs' Joint Response is the first time within the summary judgment pleadings where the Trustee's counsel signs the document as attorney for the co-plaintiff Chapter 13 Trustee, along with Ms. Evans's counsel (Doc. No. 73). Defendants filed a Combined Reply Brief in Support of their Motion for Partial Summary Judgment and a Response to Debtor's Motion for Summary Judgment (Doc. No. 72). Plaintiffs filed a Reply Brief in support of their Renewed MSJ along with a Motion for Joinder Pursuant to Rule 56(f) (Doc. No. 76) (the "Plaintiffs' Reply").

[7] To the extent any non-core claim is resolved on a final basis herein, this opinion shall constitute proposed findings of fact and conclusions of law relative to that claim.

## III.   MATERIAL FACTS

### A.   Purchase of the Property

Unless otherwise noted, the following material facts are undisputed.

This case is about who owns property located at 1978 Clairmont Terrace in Chamblee, Georgia (the "Property"). On or about March 28, 2012, before the purchase of the Property, Ms. Evans and Mr. Kaiser executed an agreement titled "Contract for Division of Proceeds from Sale of 1978 Clairmont Terrace" (the "Division of Proceeds Agreement"). [Defs.' SOMF ¶ 1; Evans Dep., 12:6–13:14; Defs.' MSJ, Ex. A.] The Division of Proceeds Agreement states that Ms. Evans was to take out a loan only in her name to purchase the Property because Mr. Kaiser's self-employment prevented him from being a co-borrower on the loan. [Defs.' SOMF ¶ 2; Evans Dep., 11:13–21; Defs.' MSJ, Ex. A.] The agreement states that Ms. Evans "will not be contributing towards the down payment, closing costs, or other costs of obtaining the home," and as a result "[Mr. Kaiser] will receive all proceeds from the sale of the [Property] minus those proceeds [Ms. Evans] earned by working on the house." [Defs.' SOMF ¶ 2; Evans Dep., 13:16–14:12; Defs.' MSJ, Ex. A.] It further states that Ms. Evans's monthly mortgage payment would be $350. [Defs.' MSJ, Ex. A.]

Ms. Evans purchased the Property for $99,000 in April 2012 through a special warranty deed granted only to her. [Pls.' RSOMF ¶ 3; Evans Dep., 11:8–21; Am. Compl., Ex. 1.] On May 13, 2013, Ms. Evans executed a limited warranty deed adding Mr. Kaiser to the title, thereby vesting title in both as joint tenants with right of survivorship. [Pls.' RSOMF ¶ 4; Am. Compl., Ex. 2.] Ms. Evans and Mr. Kaiser

refinanced the Property with a loan for $94,000 in 2013 and executed a Security Deed in favor of Nationstar Mortgage, LLC ("Nationstar"). [8] [Am. Compl., Ex. 2, p. 27.] Mr. Kaiser and Ms. Evans lived in the Property together, each contributing to the monthly mortgage payments. [Am. Compl. ¶ 17; Evans Dep., 21:6–12; Evans Dec. ¶ 8.] Ms. Evans testified that she paid half the mortgage payments [Evans Dep., 21:5–10.], while Lindsay Kaiser testified Ms. Evans's monthly contribution was considered rent. [Kaiser Dep., 54:12–15.] They often rented rooms within the Property for rental income, with usually two renters at a time. [Evans Dep., 38:20–24.]

On January 27, 2018, Ms. Evans and Mr. Kaiser executed an agreement titled "Option Agreement" whereby Mr. Kaiser had the "option to purchase the interest of [Ms. Evans] in the [Property]" until December 31, 2023, upon written notice. [Defs.' SOMF ¶ 7; Evans Dep., 16:14–17:13; Defs.' MSJ, Ex. C.] The Option Agreement required an appraisal, paid by Mr. Kaiser, within ten days of the written notice. [Defs.' MSJ, Ex. C.] The Option Agreement required closing and payment to Ms. Evans within sixty days of the written notice, unless delayed by the appraisal. [*Id.*] The purchase price was one-half of the net equity in the Property, reduced by Mr. Kaiser's original downpayment of $27,000 and his expenses for materials and labor for renovations of $103,400. [*Id.*]

---

[8] The original lender on the Note was Embrace Home Loans, Inc. MERS is the grantee as nominee for Embrace Home Loans, Inc, and Embrace Home Loans transferred the Security Deed to Nationstar in May of 2024. For ease of reference, this opinion generally refers to Nationstar as the holder of the Security Deed.

## B.    The Three Deeds

Ms. Evans lost her employment at a dental office in February 2019 [Evans Dep., 19:17–20:4.], and Mr. Kaiser agreed to loan Ms. Evans money as a result of her loss of income. [Evans Dep., 20:6–13.]

On February 27, 2019, Ms. Evans signed a quitclaim deed ("Deed 1") which on its face states,

> for and in consideration of ONE DOLLAR ($1.00) and other good and valuable considerations, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed, and does remise, release and forever quit claim to the said Grantee, ALL OF the right, title, interest, and claim or demand which the said Grantor has or may have had in and to.

[Am. Compl., Ex. 4.] Ms. Evans alleges that she executed Deed 1, on Mr. Kaiser's request, as collateral for the money he loaned her, and Mr. Kaiser stated he would not record the deed. [Pls.' RSOMF ¶¶ 8, 9; Evans Dep., 20:20–21:25.] Defendants contend that Deed 1 was not collateral but instead was a conveyance of Ms. Evans's interest in the Property to Mr. Kaiser. [Defs.' SOMF ¶ 8.] Lindsay Kaiser testified that Mr. Kaiser paid Ms. Evans $60,000, not as a loan, but as a buyout of her supposed equity in the Property. [Kaiser Dep., 206:9–19; 236:2–6.]

Regardless of the dispute as to the reason for the transfer, it is undisputed that no witnesses were present when Ms. Evans signed Deed 1, other than Mr. Kaiser, and Deed 1 was never recorded. [Defs.' SOMF ¶ 9; Pls.' RSOMF ¶ 9; Evans Dep., 20:16–18.] It is also undisputed that Deed 1 itself contains no terms of the alleged loan agreement between Mr. Kaiser and Ms. Evans, and no separate agreement exists memorializing the alleged loan, the specific amount loaned, or repayment terms. [Pls.'

8

RSOMF ¶ 10; Evans Dep., 20:24–21:16.] Ms. Evans testified that Mr. Kaiser offered to pay her $60,000, but she had no need for that amount, and he only loaned her $7,600. [Evans Dep., 22:18–23:6] Further, Ms. Evans alleges Deed 1 was the only deed she signed, and it was not recorded. [Evans Dep., 25:22–24; Evans Dec. ¶ 21.]

Deed 1 reflects Mr. Kaiser's signature as the unofficial witness. [Am. Compl., Ex. 4.] Ms. Evans claims that after discovering he could not sign as both grantee and witness, he executed two new deeds ("Deeds 2 and 3"). [Evans Dec. ¶¶ 17, 18.] She further alleges that Mr. Kaiser had another individual, Jacqueline Terry, sign Deeds 2 and 3 the following day as a witness, and he forged Ms. Evans's signatures on them. [Pls.' SOMF ¶¶ 21, 22; Evans Dep., 27:11–28:8; Evans Dec. ¶¶ 18, 20.] Deeds 2 and 3 contain the same terms as Deed 1 and are both dated February 28, 2019. [Am. Compl., Ex. 5.]

Subsequently, Ms. Evans learned about Deeds 2 and 3, which, unbeknownst to her, Mr. Kaiser recorded. [Evans Dec. ¶ 18.] Mr. Kaiser recorded Deed 2 on April 11, 2019, and Deed 3, four days later, on April 15, 2019 [*Id.*; Pls.' SOMF ¶ 26; Am. Compl., Exs. 5, 6.] Both Deeds 2 and 3 have an individual acknowledgement form attached with a signature purportedly by notary Buretta Polain, acknowledging that Ms. Evans appeared in front of her regarding the deeds, however no signature appears on the official attestation lines of the deeds. [Am. Compl., Exs. 5, 6.][9]

---

[9] Plaintiffs allege that Ms. Polain's signature is forged on the acknowledgement forms of Deeds 2 and 3 and filed an affidavit from Ms. Polain in connection with the same (First MSJ, Ex. 3). The Court expresses no opinion or conclusions regarding the validity of the notary signatures. However, no party disputes that both recorded deeds lack an attestation by an official witness.

### C.      Mr. Kaiser's Death and Subsequent Acts

Mr. Kaiser passed away on November 7, 2021. On February 4, 2022, Mr. Kaiser's estate initiated a dispossessory action in Dekalb County, Magistrate Court against Ms. Evans seeking recovery of the Property. *See* Case No. 22SD00016. The dispossessory action was transferred to the Superior Court of Dekalb County where it has since been stayed due to Ms. Evans's bankruptcy filing. *See* Case No. 22CV10230.

After Mr. Kaiser's death, Ms. Evans remained unemployed for several months and could not afford to make mortgage payments. [Evans Dep., 47:23–48:8.] Mr. Kaiser's estate paid the mortgage during this time. [*Id.*]

### D.      The Bankruptcy Case

Ms. Evans filed a petition for relief under chapter 13 of the Bankruptcy Code on May 16, 2024, and continues to reside in the Property. She evicted her last renter in January 2025, but now receives $1,500 per month for rent and various bills from her boyfriend, Brian Bedell. [Errata Statement ¶¶ 5, 7, 8.]

Ms. Evans's schedules list the Property with a current value of $620,000 (BK Doc. No. 1, at 16). She also claims an exemption in the Property of $21,500 (*Id.* at 22, Schedule C). Her scheduled claims and filed proofs of claims include: Nationstar, the only secured creditor, holding a claim for $14,942.89 secured by the Property (*Id.* at 23), Georgia Power holding an unsecured claim for $750 (*Id.* at 25), Capital One, N.A. holding an unsecured claim for $915.92 (*Id.*), and JP Morgan Chase Bank, N.A. holding an unsecured claim for $971.88 (*Id.*). Ms. Evans scheduled Mr. Kaiser's estate

with an unsecured claim for $23,577.82, for mortgage payments paid by his estate (*Id.* at 24). She lists this claim as contingent, unliquidated and disputed (*Id.*).

Ms. Evans's chapter 13 plan proposes payments of $215.21 per month, increasing to $1,635.04 per month starting August 16, 2024, for a plan length of 36 months (BK Doc. No. 23). The plan states that the first two post-petition monthly mortgage payments were made outside of the plan, but the increase in plan payments includes the 11 remaining mortgage payments to Nationstar to pay the mortgage in full (*Id.*). The plan also provides payment in full to all unsecured creditors (*Id.*). The plan has yet to be confirmed, but Ms. Evans had paid $21,871.54 into her case as of the time of the filing of the motions, with $1,624.89 paid to the Trustee, leaving the Trustee holding $20,246.65 for disbursement to creditors. [Defs.' MSJ, Ex. 5.] Confirmation of Ms. Evans's proposed plan has been continued pending a ruling on the parties' motions in this adversary proceeding.

On October 16, 2025, Mr. Kaiser's estate filed an amended claim for $620,000, representing the value of the Property pursuant to the quitclaim deeds (BK POC 4-2). Ms. Evans filed an objection to the claim for the same reasons as set forth in this adversary proceeding (BK Doc. No. 37).

## IV.   CONCLUSIONS OF LAW

### A.   Standard of Review

The standard for summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings through Bankruptcy Rule 7056. Summary judgment is proper if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, show no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). The moving party bears the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). "All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (citing *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1369 (11th Cir. 1982)).

### B.    Trustee and Debtor Standing

The Court first addresses Defendants' standing arguments. Defendants argue that neither the Trustee nor Ms. Evans have standing to bring an avoidance action under § 544. They further argue that even if the Trustee has proper standing, the Trustee did not sign the summary judgment motion or in any way indicate the motion was on behalf of the Trustee and Debtor. Courts that have grappled with whether a chapter 13 trustee has standing to pursue avoidance actions focus their analysis on two key provisions of the Bankruptcy Code. First, § 1302(b) outlines a chapter 13 trustee's duties and provides that the trustee shall "perform the duties specified in

12

section 704(a)(2), 704(a)(3), 704(a)(4), 704(a)(5), 704(a)(6), 704(a)(7) and 704(a)(9) of this title." Second, § 103(a) provides, among other things, that the chapter 5 avoidance powers apply in chapter 13 cases.

Defendants' standing arguments rely on *In re Carter*, 2 B.R. 321 (Bankr. D. Colo. 1980). In *Carter*, the debtor brought an avoidance action against a creditor, and the court analyzed whether a chapter 13 trustee or debtor had standing to bring such action. *Id.* at 321–22. In discussing the different duties and powers of chapter 7 and 13 trustees, the court noted that a 13 trustee's powers under § 1302 incorporate § 704(a)(2) but omit § 704(a)(1), which is the duty to "collect and reduce to money the property of the estate." *Id.* at 321. The court went on to say that "[t]he avoidance of liens under the strong-arm clause might well constitute collection of property of the estate. Thus, it could be argued that [§] 1302(b) is inconsistent with and, therefore, overrides [§] 103(a)." *Id.* at 321–22. Importantly, the court's pontifications on this point were merely dicta, and the court declined to make a definitive finding on this question because it was the debtor bringing an avoidance action, not the chapter 13 trustee. *Id.* at 322.

Contrary to *Carter*, numerous courts have found chapter 13 trustees have the same avoidance powers as a chapter 7 trustee, finding "a Chapter 13 trustee may appear and invoke the strong arm powers under section 544(a) to avoid a creditor's interest just as a Chapter 7 trustee would . . . ." *Beskin v. Bank of N.Y. Mellon (In re Perrow)*, 498 B.R. 560, 568–69 (Bankr. W.D. Va. 2013); *see also Hansen v. Green Tree Servicing, LLC (In re Hansen)*, 332 B.R. 8, 16 (B.A.P. 10th Cir. 2005); *Ryker v. Current*

*(In re Ryker)*, 315 B.R. 664, 670 (Bankr. D.N.J. 2004). In fact, Defendants cite cases in direct opposition to their argument. *See In re Davis*, No. 07-10035, 2007 Bankr. LEXIS 2977, at *3 (Bankr. N.D. Ga. July 9, 2007) ("[I]n a Chapter 13 case, the Code reserves to the Chapter 13 Trustee the power to avoid fraudulent transfers."); *Davis v. Victor Warren Props. (In re Davis)*, 216 B.R. 898, 903 (Bankr. N.D. Ga. 1997).

In *Perrow*, the bankruptcy court found that "[s]ection 103(a) of the Code makes section 544(a) applicable in a Chapter 13 case. As such, a Chapter 13 trustee may appear and invoke the strong arm powers . . . despite the fact that a Chapter 13 trustee's interests in the case may differ from those of a Chapter 7 trustee's." 498 B.R. at 568–69. Avoidance powers are found in Chapter 5 of the Bankruptcy Code which is expressly applied to chapter 13 cases through § 103(a). Further, "the exercise of avoidance powers by a Chapter 13 trustee can be a means to fulfill the duty to '[] assist the debtor in performance under the plan,' set forth in § 1302(b)(4)." *In re Ryker*, 315 B.R. at 670. Additionally, § 546 imposes time limitations on avoidance powers through "the later of — (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 . . . ." Notably present is the reference to § 1302. There would be no need to impose a time limitation on avoidance actions if chapter 13 trustees have no such power in the first place. *See In re Cecil*, 488 B.R. 200, 203 (Bankr. M.D. Fla.

14

2013). Accordingly, the Court finds that the Trustee has standing to bring an avoidance action.

Defendants further argue that even if a chapter 13 trustee has standing, Ms. Evans brings this motion alone for which she lacks standing as a chapter 13 debtor. The Court finds this argument equally unavailing. Defendants are correct that a number of courts have found a chapter 13 debtor alone lacks authority to exercise a trustee's strong-arm powers under § 544. *See In re Hansen*, 332 B.R. 8; *In re Davis*, 2007 Bankr. LEXIS 2977, at *3–4; *Carrasco v. Richardson (In re Richardson)*, 311 B.R. 302 (Bankr. S.D. Fla. 2004); *Cole v. James B. Nutter & Co.* (*In re Cole)*, 563 B.R. 526 (Bankr. W.D.N.C. 2017). Defendants, however, overlook the significance of the Trustee's role as a co-plaintiff in this adversary proceeding. Both Ms. Evans and the Trustee brought the Amended Complaint, evidenced by both parties' signatures on it. [Am. Compl., p. 13.] Moreover, while counsel for Ms. Evans filed the initial summary judgment motion without counsel for the Trustee's signature, the Trustee's counsel ultimately signed later filings related to the motion which the Court views as the Trustee's authorization and support. [10]

Numerous courts have allowed chapter 13 debtors to bring avoidance actions when the chapter 13 trustee is either a co-plaintiff or authorizes the action. *See, e.g.,*

---

[10] Counsel for the Trustee signed both Plaintiffs' Reply and Plaintiffs' Response. Plaintiffs' last docketed filing, Plaintiffs' Reply, effectively requests relief to join the Trustee to the Renewed MSJ as originally filed pursuant to Federal Rule of Civil Procedure 56(f), and requesting that summary judgment be entered in favor of the Trustee. The Court construes Plaintiffs' Renewed MSJ as one filed on behalf of the Debtor and the Trustee as co-plaintiffs for which Defendants have had ample notice and full opportunity to respond. No prejudice results to Defendants by the Trustee's late joinder and support of the Plaintiffs' Renewed MSJ.

15

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 402 B.R. 299, 306 (Bankr. N.D. Ind. 2009) (finding that avoidance adversary proceeding was being pursued by debtor on behalf of estate pursuant to authorization by trustee); *Moore v. Berry (In re Moore)*, No. 21-03041, 2022 WL 839702, at *3–4 (Bankr. E.D. Va. Mar. 21, 2022) (allowing debtor and chapter 13 trustee to bring avoidance action complaint as joint plaintiffs particularly because trustee may not always have resources to litigate avoidance actions). The Trustee joined the Plaintiffs' Renewed MSJ as originally filed, and accordingly, standing is proper through the Trustee.[11] Defendants' standing arguments are overruled.

## C.     Ambiguity of the Complaint

The next gating issue is whether Plaintiffs seek avoidance of all three deeds under § 544. The Amended Complaint is not a model of clarity on this point. As an initial matter, count I of the Amended Complaint uses the capitalized term "Transfers" at times, but the Amended Complaint fails to define the term. [Am. Compl. ¶ 71.] Count I also states, "[t]he quitclaim deeds [again undefined] are defective on their face and invalid because they were not properly witnessed or attested." [Am. Compl. ¶ 69.] Since count I realleges and incorporates facts relating to all three quitclaim deeds from earlier portions of the Amended Complaint, the Court is left to guess whether it seeks avoidance of all three deeds. Count I states,

---

[11] Defendants' MSJ pursues a finding that, in the case Plaintiffs lack proper standing, resolution of the avoidance claims should be construed under § 522(h), limiting recovery to Ms. Evans's valued exemption on the Property of $21,500. Section 522(h) grants a debtor power to bring an avoidance action only if the chapter 13 trustee fails to bring an action. *See Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 493 (Bankr. E.D. Pa. 2008). The Court disregards this argument since it finds the Plaintiffs have proper standing, and the Trustee has filed an avoidance action.

16

"[e]ven though the invalid deeds were recorded [and Deed 1 indisputably was not], the Trustee can avoid them . . . ." [*Id.* ¶ 68.] That language coupled with the prayer for relief at the conclusion of the Amended Complaint makes clear that relief as to Deed 1 is not sought in count I. The prayer for relief expressly requests the Court to "[a]void the purported transfers of the patently defective recorded quitclaim deeds (Deeds #2 and #3) under 11 U.S.C. § 544(a)(3)." [*Id.* at "Wherefore" clause.] Count I is the only count of the Amended Complaint for which relief is sought under § 544(a)(3). Additionally, Plaintiffs' Renewed MSJ expressly mentions only the "two recorded quitclaim deeds" when referencing count I. [Pls.' Renewed MSJ, p. 2, 6.] (requesting the Court hold "two recorded quitclaim deeds at issue are patently defective.").

Defendants raise the point that merely avoiding Deeds 2 and 3 does not resolve any of the core issues. Defendants argue that if Deed 1 transferred the property to Mr. Kaiser, avoidance of only Deeds 2 and 3 would yield no practical result. Deed 1 would still stand, and the transferred interest would remain outside of the bankruptcy estate's control. Such arguments, however, ignore the relief sought by Plaintiffs in count II: that Deed 1 was merely a security deed to secure repayment of a loan and not intended to transfer Ms. Evans's ownership interest. In fact, Plaintiffs argue that Deed 1 conveyed no property interest to Mr. Kaiser because it was

17

intended to act as collateral only, thus no avoidance of a transfer is necessary as to Deed 1. [Am. Compl. ¶¶ 53–57.]

In response to Defendants' arguments, and despite Plaintiffs' argument that Deed 1 was not a transfer, Plaintiffs assert that count I of the Amended Complaint expressly seeks avoidance of all three deeds. [Pls.' Joint Resp., p. 14.] The Court simply disagrees. The Amended Complaint does not clearly articulate such a request in count I, and parties cannot amend their complaint through new assertions raised during summary judgment. *See Melgoza v. Rush Univ. Med. Ctr*, 499 F. Supp. 3d 552, 564 (N.D. Ill. 2020); *Boesenhofer v. AECOM*, No. 17-1072, 2022 WL 20746519, at *1 n.1 (E.D. Pa. Jan. 12, 2022); *Tindol v. Ala. Dep't of Revenue*, No. 13-CV-92-WKW, 2015 WL 350623, at *24–5 (M.D. Ala. Jan. 23, 2015) (rejecting plaintiff's attempt to rely on alleged oral statements to form contract where complaint pleaded contract based on defendant's policies, procedures, and handbooks); *Wilcox v. Green Tree Servicing, LLC*, No. 8:14-CV-1681-T-24, 2015 WL 2092671, at *1 (M.D. Fla. May 5, 2015) ("[T]he Court can only consider the claims and theories of liability that Plaintiff actually pled in her complaint.").

While the language of count I is confusing and ambiguous, the prayer for relief makes clear that the claims brought under § 544(a)(3) only seek avoidance of Deeds 2 and 3. If Plaintiffs intended to seek avoidance of Deed 1 in count I, they should have said so explicitly. The Court finds no language upon which to reasonably infer the transfers sought to be avoided in count I included Deed 1. Plaintiffs first raise a claim for avoidance of Deed 1 within a summary judgment response brief which makes the

18

claim not appropriate for consideration. To allow otherwise would result in "a moving of the goalposts, and this is not permitted at summary judgment." *Banks v. Marketsource, Inc.*, No. 18-CV-2235, 2019 WL 8277274, at *8 (N.D. Ga. Dec. 5, 2019).

The Court finds that count I of Plaintiffs' Amended Complaint seeks avoidance of Deeds 2 and 3 only. The Court now turns to whether summary judgment on count I is appropriate.

### D.      Count I: Avoidance

#### 1.      Deeds 2 and 3 Avoidable Under § 544

Although a deed that fails to comply with recordation requirements is still valid between the parties, the Bankruptcy Code grants a trustee the power under § 544 to act as a hypothetical bona fide purchaser to avoid an otherwise valid transfer of property. *See Dynasty Grp., Inc. v. Smith*, No. 14-03603, 2018 WL 9651887, at *3– 4 (S.D. Miss. Sept. 25, 2018) (avoiding quitclaim deed where trustee could not have notice because deed was unrecorded); *Martin v. CitiFinancial, Inc. (In re Martin)*, 387 B.R. 307, 317 (Bankr. S.D. Ga. 2007) ("Because an improperly attested deed to secure debt is valid between the parties, a debtor suing under state law to void the lien would likely fail. However, upon filing bankruptcy, additional rights accrue.").

Section 544(a)(3) provides, in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

…

19

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Section 544(a)(3) allows a trustee to "step into the shoes of a *bona fide* purchaser of real estate–a purchaser for valuable consideration without notice. The trustee's rights as a *bona fide* purchaser under section 544(a) are limited to those rights he or she would have under applicable state law; no more and no less." *In re Perrow*, 498 B.R. at 571. The question here becomes whether the transfers of title by deeds were effective against a bona fide purchaser under Georgia law. If not, the Trustee has the strong-arm power to avoid the transfers.

Georgia law requires a deed to land to be attested by two witnesses to be eligible for recordation, with at least one witness being an official such as a notary. O.C.G.A. §§ 44-5-30, 44-2-15; *see also Pingora Loan Servicing, LLC v. Scarver (In re Lindstrom)* 30 F.4th 1086, 1090 (11th Cir. 2022); *Middlebrooks v. City of Macon-Bibb County, GA.*, No. 5:23-cv-83, 2024 WL 555884, at *14 (M.D. Ga. Feb. 12, 2024) (explaining that quitclaim deeds require attestation of two witnesses, with one being an officer). Attestation means "the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact." *In re Lindstrom*, 30 F.4th at 1090, 1093 (citation omitted). Mere acknowledgement by an official witness is insufficient. O.C.G.A. §§ 44-2-14; O.C.G.A. 44-5-30.[12]  If a deed is not attested, then

---

[12] Georgia law allowed for either attestation or acknowledgement by an official witness until the law was amended in 2015.  The transactions here took place in 2019, well after the change in Georgia law.

it is patently defective, does not provide constructive notice to a bona fide purchaser even if recorded, and may be avoided by a trustee under § 544. *See In re Lindstrom*, 30 F.4th at 1091 ("No one disputes that the deed was missing the required attestation by an official. As a result, the trustee can "avoid" the deed . . . ."); *U.S. Bank, N.A. v. Gordon,* 709 S.E.2d 258 (Ga. 2011); *Gordon v. Wells Fargo Bank, N.A. (In re Knight),* 504 B.R. 668 (Bankr. N.D. Ga. 2014).

Here, no genuine issue of material fact exists with respect to whether Deeds 2 and 3 were properly attested and in recordable form under Georgia law. Defendants provide no argument showing the notary signature on Deeds 2 and 3 satisfy the Georgia requirements for recordation. Because the deeds are not properly attested by an official witness, the deeds are patently defective and do not provide constructive notice even though they were recorded.[13] That, however, does not end the Court's inquiry.

### 2.    Preservation Under § 551 and Recovery Under § 550

"Avoidance has three separate and distinct consequences. First, § 544(a) nullifies the transfer. Second, § 551 preserves the transfer automatically by operation of law for the benefit of the estate. Third, § 550 may be used, if necessary, to recover property from a third person for the benefit of the estate." *Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 498 (D.S.C. 2000) (internal citations omitted). Section 550 provides that "to the extent that a transfer is avoided under section 544, 545, 547,

---

[13] Since the Court finds that Deeds 2 and 3 fail to comply with Georgia recordation requirements, the Court need not inquire into the concerns regarding the validity of Buretta Polain's and Ms. Evans's signatures.

21

548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ." 11 U.S.C. § 550(a).

The parties disagree on whether Plaintiffs must bring a claim under § 550 to obtain the ultimate goal of vesting title to the Property in Ms. Evans's name. Plaintiffs assert that § 544 and § 550 are two distinct causes of action and merely avoiding a transfer under § 544 does not require any "benefit of the estate" analysis under § 550. They further argue that a § 550 claim is not necessary because Ms. Evans's interest in the Property is automatically preserved under § 551 and she remains in possession of the Property, leaving nothing to recover from a third party. In opposition, Defendants argue that a § 550 claim is required because after avoidance of a property interest the trustee must seek recovery to put the bankruptcy estate in possession of the property. [Defs.' MSJ, p. 25.] They further argue Plaintiffs cannot show any benefit to the estate as required under § 550.

As an initial matter, the Court recognizes that avoidance and recovery are distinct from each other and avoidance does not always require recovery. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). In determining whether recovery under § 550 is applicable after a § 544 avoidance, courts often look at whether the transferee received a possessory or non-possessory interest. Generally, recovery under § 550 is not necessary after avoidance of the transfer of a non-possessory interest like a lien or mortgage. Where the underlying property is already in the estate's possession because the debtor retains ownership, avoidance alone is a

22

sufficient remedy because the interest for the estate is automatically preserved under § 551.[14]   Where, however, the transfer involved a possessory interest, such as a transfer of title to real property, the trustee "must establish a right to a second form of relief, namely recovery of the Property or its value under § 550."[15]

Authorities cited by the parties fall in these general lines. Plaintiffs cite cases in the first line involving avoidance of non-possessory liens or mortgages.[16] In contrast, Defendants cite cases involving title transfers where the transferee has possession or title of the transferred property.[17] Neither scenario aligns directly with the facts of this case.  On one hand, Ms. Evans remains in possession of the Property, and if she avoids Deeds 2 and 3, she arguably does not need any additional action to recover possession of the Property through § 550.  At the same time, however, even if

---

[14] *See Schnittjer v. Linn Area Credit Union (In re Sickels)*, 392 B.R. 423, 427 (Bankr. N.D. Iowa, 2008); *Moyer v. Rosich* (*In re Rosich)*, 570 B.R. 278, 282 (Bankr. W.D. Mich. 2017); *In re Burns*, 322 F.3d at 428 ("[I]n cases involving creditors such as IMC who have nonpossessory interests in the debtor's property, trustees will generally not have to seek recovery . . . ."); *Agin v. PNC Mortg. (In re Spodris)*, 516 B.R. 196, 202 (Bankr. D. Mass. 2014) (finding where a non-possessory security interest or lien is avoided, "[b]ecause preservation in essence returns the property transferred—the lien—to the estate, there is no longer any property to recover, rendering resort to § 550 unnecessary.").

[15] *In re Rosich*, 570 B.R. at 283; *see also In re Burns*, 322 F.3d at 428 ("In the case of creditors who have possessory interests in the debtor's property, the trustee will generally have to pursue recovery, because mere avoidance would not bring the property back into the estate's possession."); *Rodriguez v. Drive Fin. Servs. LP (In re Trout)*, 392 B.R. 869, 872 (Bankr. D. Colo. 2008) ("Leaving the consequences of lien avoidance to § 551 alone, and allowing a trustee the recovery remedies of § 550(a) only where possessory interests in property are avoided, eliminates the strained application of these two sections . . . .").

[16] *See Carpenter v. G.E. Cap. Mortg. Servs. (In re Carpenter)*, 266 B.R. 671 (Bankr. E.D. Tenn. 2001) (avoiding lien created by a note and deed of trust); *Eisen v. Allied Banschares Mortg. Corp. LLC (In re Priest)*, No. 99-13816, 2000 WL 821379 (Bankr. N.D. Ohio May 25, 2000) (avoiding mortgage not properly witnessed under Ohio law); *Dunes Hotel Assocs.*, 245 B.R. 492 (finding debtor could not avoid unrecorded leasehold interest).

[17] *See Wellman v. Wellman*, 933 F.2d 215, 218–19 (4th Cir. 1991) (finding debtor lacked standing to recover transfer of stock as fraudulent conveyance under § 548 without meeting benefit of the estate requirement of §550).

23

she avoids Deeds 2 and 3, Deed 1 remains at issue, and whether she ultimately maintains or recovers title to the Property rests on whether Plaintiffs are successful on their claim under count II. Importantly, the Court does not believe the ultimate resolution of the case rests on whether a § 550 claim is necessary here.

As a number of Courts have held, § 544 avoidance powers are not unrestricted, and unique circumstances may warrant applying equitable principles to bar avoidance when avoidance would be contrary to the purpose of the Bankruptcy Code. *See Glanz v. RFJ Int'l Corp. (In re Glanz)*, 205 B.R. 750, 758 (Bankr. D. Md. 1997) (holding 550 inapplicable in a lien avoidance but finding "equitable principles may be applied to bar a lien avoidance action where the avoidance does not accrue to the benefit of creditors but instead creates a windfall for the debtor."). The rationale the court uses in *Dunes Hotel Associates* is particularly on point. There, a debtor brought an action to avoid an unrecorded leasehold interest without triggering § 550(a) because it is a nonpossessory interest. *Dunes Hotel Assocs.*, 245 B.R. at 498. The court categorized the case as a rare duck, "in which the literal application of certain Bankruptcy Code provisions would result in an outcome at odds with the purposes and goals of the Bankruptcy Code." *Id.* at 497. Notwithstanding the court's conclusion that § 550 was inapplicable on the facts of the case, the court still analyzed whether there was a benefit to the estate because the debtor was "wielding the battle-ax of avoidance as a weapon . . . ." *Id.* at 506. "A trustee or debtor-in-possession is a fiduciary that should act in the interests of the creditors, not in its own interests." *Id.* The court found debtor's sole purpose of remaining in bankruptcy was to avoid the

24

leasehold interest despite avoidance being unnecessary to pay any non-insider creditor. *Id.* at 508. Even if avoiding the leasehold interest increased the value of the estate, the only parties to benefit from the debtor re-leasing the property would be the debtor and its insiders, resulting in a windfall. *Id.* at 511.

In light of the unique facts of this case, the Court finds it necessary to analyze whether there is a benefit to the estate even if § 550 does not apply. Courts have defined benefit to the estate in different ways. One line of cases uses a broad interpretation, generally finding that a benefit to the estate can be direct or indirect and does not have to mean additional funds paid to unsecured creditors. [18] "These courts recognize that the benefit to the estate is a broader concept than the benefit to creditors." *New Life Adult Med. Day Care Ctr., Inc. v. Failla & Banks, LLC* (*In re New Life Adult Med. Day Care Ctr., Inc.*), No. 13-1076, 2014 WL 6851258, at *5 (Bankr. D.N.J. Dec. 3, 2014). Plaintiffs urge the Court to adopt this approach and argue that clarifying title to the Property and retaining a stable residence enhances the likelihood of a successful reorganization. Another line of cases requires a direct

---

[18] *See Greenbelt Coop., Inc. v. Werres Corp. (In re Greenbelt Coop., Inc.),* 124 B.R. 465, 473–74 (Bankr. D. Md. 1991) (finding avoidance benefits estate by improving debtor's financial health and increasing likelihood of successful reorganization); *Gonzalez v. Conagra Grocery Prods. Co. (In re Furr's Supermarkets, Inc.)*, 373 B.R. 691, 699 (B.A.P. 10th Cir. 2007) (finding benefit to the estate to be interpreted more broadly than payment to unsecured creditors); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 811 (9th Cir. 1994) (finding a benefit "even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers."); *Trans World Airlines, Inc. v. Travellers Int'l (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 973 (Bankr. D. Del. 1994) ("The basic purpose of a recovery pursuant to § 550(a) is to enlarge the estate for the benefit of creditors . . . . As to whether the benefit to the estate is "meaningful" . . . I do not find such a requirement to be implicated by § 550(a)."); 5 COLLIER ON BANKRUPTCY ¶ 550.02 (16th ed. 2026) ("If the recovery will have some positive benefit to the estate or its creditors, however, recovery may be had even if such benefit is indirect. Thus, it is not necessary . . . that the recovery of the avoided transfer be used directly to pay unsecured creditors.").

benefit to creditors, typically finding no benefit if creditors are to be paid in full even without the avoidance.[19] The Defendants urge this approach.

Regardless of which line the court ultimately follows, a benefit to the estate means more than merely a benefit to the debtor. *Dunes Hotel Assocs.*, 245 B.R. at 507. "Whether a particular action provides a windfall for the debtor or a benefit to the estate 'depends on a case-by-case, fact-specific analysis.'" *Id.* at 509 (quoting *Wellman*, 933 F.2d at 218). The plan as proposed provides for a 100 percent dividend to all creditors, and the Trustee holds $20,246.65 for disbursement to creditors. Without including the disputed claim held by Mr. Kaiser's estate, claims against Ms. Evans total $16,830.36. Defendants argue that the Trustee has funds to pay all creditors so avoidance would only result in a windfall to Ms. Evans. This argument ignores the amount, if any, of Defendants' claims, which remain unresolved. Whether there is any benefit to the estate or whether Ms. Evans will receive a windfall is a disputed issue of material fact that rests on further developments in the case. If Defendants end up with substantial allowed claims against the Debtor's estate, income from the Property or proceeds from a disposition of the Property may be necessary to pay those claims, and Ms. Evans will not receive a windfall. On the other hand, if the Defendants have no claims against the estate for which the Property is necessary to

---

[19] *See Balaber-Strauss v. Murphy (In re Murphy)*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005) ("[A]voidance action[s] . . . may not be pursued if it would only benefit the debtor."); *Wansdown Props. Corp. N.V. v. Azari (In re Wansdown Props. Corp. N.V.)*, 647 B.R. 23, 34 (Bankr. S.D.N.Y. 2022) ("[I]f all creditors stand to be paid in full even without avoidance of the transfer at issue, it would not benefit the estate . . . ."); *Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 500, 511–12 (Bankr. D. Minn. 1993) (finding no benefit where "plan provides for a payment to creditors from a pot of money which will be unaffected by any preference recoveries. That payment will not increase if [plaintiffs] were successful in recovering those preferences," and disagreeing with other courts who find an increase in wealth to the debtor results in a benefit to creditors).

26

pay, and the Trustee is holding sufficient funds to pay all other claims in full, then the Debtor stands to gain a substantial windfall from avoidance of the deeds. Given that substantial issues of material fact persist on these issues, summary judgment on count I in favor of either party is inappropriate, and both parties' requests for summary judgment on count I will be denied.

### E.      Count II: A Deed to Secure Debt

Defendants also move for summary judgment on Plaintiffs' count II which seeks a declaratory judgment that the first deed is a deed to secure debt. Defendants argue that Deed 1 is a valid and enforceable property transfer for which Mr. Kaiser paid Ms. Evans $60,000 as consideration. They assert that Plaintiffs' count II impermissibly attempts to reform the quitclaim deed into a security deed which violates the statute of frauds. Plaintiffs, on the other hand, maintain that Deed 1 was intended to act as a temporary deed to secure debt, not a permanent transfer of Ms. Evans's ownership interest and seek a declaration to that effect. The Court concludes that substantial issues of material fact remain in dispute with respect to count II which precludes summary judgment in favor of Defendants. Among other things, Plaintiffs point to Ms. Evans's testimony that she and Mr. Kaiser continued to live together in the home after the deed was signed, Mr. Kaiser told her he would not record the deed and that it was merely collateral, they kept the deed in a drawer in the home, and they continued to split the mortgage payments after execution of the deed. Based on the above, Plaintiffs contend no proper delivery of the deed occurred precluding summary judgment in Defendants' favor.

27

In contrast, Defendants point to the existence of the Option Agreement, various other contracts the parties executed in relation to the Property, and the lack of documented terms of the alleged loan as evidence that Deed 1 did not merely serve as collateral. Defendants base their statute of frauds argument on Ms. Evans's testimony that no terms of the alleged loan were in writing and case law supporting the proposition that a party cannot introduce outside evidence placing conditions on a deed. *See, e.g.*, *Pierre-Louis v. Francois (In re Francois)*, 525 B.R. 531, 534 (Bankr. N.D. Ga. 2015) ("[P]arties are barred from introducing parol evidence as a means of placing conditions on a quitclaim deed that is absolute on its face. If the conveyance . . . is found to be valid, then a failure to carry out a promise or other consideration does not invalidate the conveyance." (internal citation omitted)). Defendants' arguments, however, fail to recognize that the question of delivery is separate from a statute of frauds issue and goes to whether the conveyance was valid in the first place. Plaintiffs argue there was no proper delivery, evidenced by the surrounding circumstances, resulting in no transfer of interest.

Under Georgia law, "execution of a deed without delivery does not pass title." *Galeana v. McCommon*, 921 S.E.2d 537, 545 (Ga. Ct. App. 2025) (internal quotations omitted); *see also* O.C.G.A. § 44-5-30. Delivery rests upon whether "the grantor intended to reserve 'an opportunity for changing [her] mind, an opportunity to undo what [she] has done, or a right to withdraw from an incomplete transaction.'" *McCommon*, 921 S.E.2d at 545 (quoting *Johnson v. Johnson*, 760 S.E.2d 618, 607 (Ga. Ct. App. 2014)). The grantor's intent must be to "deprive [herself] of power and control

28

over the deed." *Johnson*, 760 S.E.2d at 606. The modern view of delivery questions the intentions of the parties and looks to surrounding circumstances. *McCommon*, 921 S.E.2d at 544–45. When there exists "*any evidence* as to the *delivery* of a deed, it is a question of fact for the jury, and not a question for the Court to decide whether there has been a delivery of the deed." *Smith v. Tibbits*, 857 S.E.2d 820, 826 (Ga. Ct. App. 2021) (quotations omitted).

Because triable issues of fact remain in dispute relative to the claim asserted in count II, the Court will deny Defendants' MSJ as to that count.

F.      <u>**Count V: Preservation Pursuant to Section 551**</u>

Defendants also move for summary judgment on count V of the Amended Complaint which seeks preservation of the avoided transfers pursuant to § 551. Defendants maintain their assertion that the deeds are not avoidable, thus no interest can be preserved for the estate. Section 551 provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." The preservation of the interest operates automatically, reverting the interest back to the estate. *See In re Sickels*, 392 B.R. at 427; *Gordon v. GMAC Mortg. Corp.* (*In re Patterson*), No. 08-6442, 2012 WL 1292642, at *2 (Bankr. N.D. Ga. Apr. 2, 2012). Because the Court is denying summary judgment as to count I, summary judgment based on Defendants' arguments under § 551 is also inappropriate, and Defendants' MSJ as to count V will also be denied.

29

### G. Counterclaims

Plaintiffs move for summary judgment on counterclaim I, Defendants' claim for breach of contract and any damages theory premised on a purported exercise of the Option Agreement or current value of the Property. Plaintiffs' Renewed MSJ argues that Defendants premised their count I contract counterclaims on an alleged exercise of the Option Agreement. They further argue that the Option Agreement was not properly exercised thus any counterclaim based on its exercise and resulting damages must fail. Defendants in reply assert the Option Agreement was never the basis for their Counterclaims and instead Deed 1 is the contract for which their alleged statutory right to a claim under § 502(h) is based. [Defs.' Reply and Resp., p. 9–10.] Further, Defendants argue that summary judgment is premature as the Counterclaims have not yet vested since they rest upon Plaintiffs' successful avoidance of the deeds. The Court agrees with this conclusion and finds summary judgment inappropriate on the Counterclaims.

Defendants' Counterclaims each state, "[i]n the event the Trustee is successful in avoiding the Quitclaim Deed pursuant to 11 U.S.C. § 544(a)(3), the Defendants['] [claim damages] against Kelly Lane Evans and the Bankruptcy Estate . . . for the current value of the Property . . . ." [Countercls. ¶¶ 11, 19, 23, 26.] The Court is not avoiding any deeds on summary judgment, so any ruling on the Counterclaims is premature. Plaintiffs' Renewed MSJ as to the Counterclaims will be denied.

### H.   <u>Declaratory Judgment Option Agreement Never Exercised</u>

Plaintiffs also request the Court to find that the Option Agreement was never exercised. They pose that Defendants, through their briefs, agree with this proposition. The Court finds no evidence that Mr. Kaiser exercised the Option Agreement and, accordingly, finds that summary judgment is appropriate on this issue.

The express terms of the Option Agreement require 1) written notice of Mr. Kaiser's exercise of the agreement, 2) an appraisal initiated within ten days of such notice, and 3) closing and payment within sixty days of the notice, unless delayed by the appraisal. [Defs.' MSJ, Ex. C.] The purchase price was to be one-half of the net equity in the Property. [*Id.*]

Testimony from Ms. Evans and Lindsay Kaiser provides the Court with no evidence that Mr. Kaiser exercised the Option Agreement in conformity with its terms. First, neither party produced evidence that Mr. Kaiser conveyed proper written notice, and Lindsay Kaiser testified that she did not recall seeing such notice within Mr. Kaiser's documents. [Kaiser Dep., 95:10–99:18; 105:3–22.] Also, no admissible evidence exists showing payment within sixty days of notice.

Accordingly, the Court finds that no genuine issue of material fact exists establishing that the Option Agreement was ever exercised, and summary judgment on that issue is appropriate.

## V.   **<u>MOTION TO DISMISS</u>**

The Trustee filed a Motion to Dismiss Defendants' Counterclaims as to her individually (Doc. No. 65). The Trustee maintains that she is not an appropriate party to the Counterclaims because she has no independent liability or responsibility for claims outside of her role as trustee, and she has no knowledge of the Counterclaims or underlying conduct. Defendants' response asserts the Counterclaims do not seek relief against the trustee individually but concede that to any extent they do, dismissal is appropriate. The Counterclaims seek relief against the Trustee as the party with standing to bring the avoidance action for the estate.

The Court finds that to the extent the Counterclaims seek relief against the Trustee individually, they should be dismissed as to her. "When a trustee sues in [her] representative capacity as a fiduciary of an estate, a counterclaim against [her] in [her] individual capacity is not proper." *Rogers v. Virgin Land, Inc.*, No. 1996-13M, 1996 WL 493174, at *1 (D.V.I. May 13, 1996); *Pergament v. Varela (In re Varela)*, 530 B.R. 573, 581 (Bankr. E.D.N.Y. 2015). However, defendants can name a trustee as a counterclaim defendant when the claims are against the estate and the trustee in her official capacity only. *See Rogers*, 1996 WL 493174, at *1; *DePaola v. Price (In re Price)*, 346 B.R. 857 (Bankr. M.D. Ala. 2006); *Atlman v. Alt. Debt Portfolios, L.P. (In re EZ Pay Servs., Inc.)*, 389 B.R. 278, 290–91 (Bankr. M.D. Fla. 2008) (allowing counterclaim against trustee seeking affirmative relief from estate relating to debtor's breach of contract prepetition). Damages sought against a trustee as a representative are then recoverable from the estate. *See In re Varela*, 530 B.R. at 581.

The Trustee provides the Court with no argument as to why the Counterclaims should be dismissed against her as a representative of the estate. Thus, to the extent the Counterclaims seek relief against the trustee in her individual capacity, they will be dismissed, but the Counterclaims as to the trustee in her official capacity remain.

## VI.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' Renewed MSJ is GRANTED in part and DENIED in part. It is GRANTED as to the request seeking declaratory judgment that the Option Agreement was never exercised. It is DENIED as to count I and DENIED as to Defendants' Counterclaims.

IT IS FURTHER ORDERED that Defendants' MSJ is DENIED.

IT IS FURTHER ORDERED that the Trustee's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. To the extent the Counterclaims are asserted against the Trustee in her individual capacity, the Counterclaims are dismissed. To the extent the Counterclaims are against the Trustee in her official capacity as representative of the Debtor's estate, the Motion to Dismiss is denied.

The Clerk is directed to serve a copy of this Order on counsel of record for all parties in this adversary proceeding.

END OF DOCUMENT